IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATHANIEL A. THOMAS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-10-4595 |
| | § | |
| RICK THALER, DIRECTOR, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION DENYING PETITIONER'S AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is

Respondent's Answer (Document No. 17) to Petitioner's Amended Federal Application for Writ of

Habeas Corpus (Document No. 10).   Having considered the Answer, in which Respondent argues

that the Amended Application "should be denied and dismissed because one of the claims presented

is procedurally defaulted and the remaining claims are without merit," Petitioner's Reply, filed in

opposition to Respondent's Answer (Document No. 21), the claims raised by Petitioner in his

Amended § 2254 Application (Document No. 10), the state court records, and the applicable law,

the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Petitioner's Amended

Federal Application for Writ of Habeas Corpus (Document No. 10) be DENIED, and that this case

be DISMISSED WITH PREJUDICE.

## I.     Introduction and Procedural History

Nathaniel A. Thomas ("Thomas") is currently incarcerated in the Texas Department of

Criminal Justice, Correctional Institutions Division, as a result of a 2007 felony conviction for sexual assault of a child in the 182nd District Court of Harris County, Texas, Cause No. 10940964. Thomas was initially charged by indictment on February 24, 2006, with the offense of aggravated sexual assault in Cause No. 1047835. Thomas pled not guilty, and proceeded to trial. On September 20, 2006, after the jury deadlocked, a mistrial was declared. Thomas was then re-indicted on December 1, 2006, in Cause No. 1094964, with the offense of sexual assault of a child. A jury found him guilty of that offense and he was sentenced to twenty (20) years imprisonment. A judgment of conviction was entered on July 26, 2007. The conviction was affirmed on appeal on October 30, 2008. *Thomas v. State*, No. 01-07-00742-CR. Thomas' petition for discretionary review was refused on June 24, 2009.

On March 30, 2010, Thomas filed a state application for writ of habeas corpus. On November 24, 2010, the Texas Court of Criminal Appeals denied the application without written order on the findings of the state trial court without a hearing. *Ex parte Thomas*, Application No. WR-74,592-02. This § 2254 proceeding was filed by Thomas on or about November 3, 2010. He has since filed an Amended § 2254 Application for Writ of Habeas Corpus (Document No. 10). Respondent has filed an Answer (Document No. 17) to that Amended § 2254 application, to which Thomas has filed a Reply (Document No. 21). This § 2254 proceeding is ripe for ruling.

II.    **Factual Background**

The brief factual background, as set forth by the Texas Court of Appeals in its written decision affirming Thomas' conviction, is as follows:

> In September 2005, when she was 17 years old, P.C. made an outcry to her aunt that [Thomas, her father] had been sexually abusing her since she was 12 years

2

old. The aunt contacted P.C.'s mother, who reported the abuse to P.C.'s school. The school reported the abuse to the Baytown Police Department. [Thomas] was later indicted for sexually assaulting P.C.

At trial, P.C. described [Thomas'] abuse over the years in graphic detail. [Thomas] also testified at trial. He denied that he had every sexually abused P.C.

[Thomas] defended himself at trial by contending that P.C. had fabricated the abuse allegations to retaliate against him for being unfaithful to P.C.'s mother, for his strict discipline, and for his punishment of P.C. for running up a large cellular telephone bill. The jury ultimately believed P.C. and found [Thomas] guilty of sexual assault. The jury then assessed the maximum penalty for sexual assault: 20 years in prison and a $10,000 fine.

*Thomas v. State*, No. 01-07-00742-CR at 2-3. In addition to that factual background, a review of the evidence submitted at trial shows that the complainant made her outcry statement to her aunt, Marylin Mitchel. S.F. Vol. 3 at 86-88.[1] It was another aunt, Monica Mitchel, who accompanied the complainant to the Baytown Police Department to make her complaint. S.F. Vol. 4 at 80. Also accompanying the complainant to the Baytown Police Department was Shantee Samuel, one of the complainant's cousins and the daughter of Monica Mitchel. *Id.*

The complainant testified at trial that about a year before her outcry to her aunt, Marylin Mitchel, she had mentioned the abuse to her cousin Shantee Samuel, but had told Shantee not to tell anyone about it. S.F. Vol. 3 at 79-81. The complainant also testified that her aunt, Marylin Mitchel, had urged her not to report the abuse to the police and to keep the matter within the family. S.F. Vol. 3 at 91-92.

---

[1] The record consistently refers to "Marilyn" Mitchell. However, in the affidavit filed in the state habeas proceeding, Thomas' sister identifies herself as "Marylin Mitchel." While she will generally be referred to herein as "Marylin Mitchell," the references in the trial record to "Marilyn" will remain unchanged.

III.   **Claims**

Thomas raises four claims in his amended § 2254 application:

1.   that his trial counsel, Michael E. Turner, was ineffective for: (a) failing to conduct an adequate pretrial investigation; (b) failing to contact, interview and call as defense witnesses Marylin Mitchel and Stephanie Lynch, both of whom could have offered testimony to impeach the State's witnesses, particularly the complainant; (c) failing to interview Shantee Mitchell; (d) failing to obtain and review reports that the State offered through the testimony of Linda Thompson, the complainant's therapist, which tended to bolster the complainant's credibility; (e) failing to cross-examine Detective Rymer, one of the police officers who investigated the case, who was a personal friend of counsel; and (f) failing to present mitigating evidence at sentencing of Thomas' background, education, ties to the community, and his "clean" record;

2.   that the State obtained his conviction through the use of perjured testimony and conflicting evidence;

3.   that he was denied a public trial when voir dire was closed to Marylin Mitchel and Stephanie Lynch; and

4.   that he is actually innocent of the offense based on the complainant's admission to Marylin Mitchel that the offense did not happen.

In his Answer, Respondent first argues that Thomas has not exhausted his state law remedies with respect to claim 1(e) and that the claim is therefore unexhausted and procedurally barred from review.  Next, Respondent argues that claim 3 is procedurally barred from review because the Texas Court of Criminal Appeals determined that the claim, which was not raised by Thomas in his direct appeal or in his petition for discretionary review, was procedurally defaulted.  Finally, Respondent argues that no relief is available on the remainder of Thomas' claims because the Texas Court of Criminal Appeals' rejection of the claims was not contrary to and did not involve an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States and was not based on unreasonable determination of the facts in light of the evidence

4

presented in the state court proceeding, 28 U.S.C. § 2254(d).

IV.    **Discussion – Exhaustion**

Federal habeas corpus petitioners are required to exhaust their available state law remedies. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). In order to exhaust state law remedies, Texas prisoners must fairly present their claims to the highest state court, the Texas Court of Criminal Appeals, through a petition for discretionary review and/or a state application for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, et seq. "'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" *Ex Parte Wilder*, 274 F.3d 255, 259-260 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Rather, the petitioner must have presented the highest state court with the same claim, the same factual basis for the claim, and the same legal theory in order to meet the exhaustion requirement. *Id.* "[F]leeting reference to the federal constitution," especially when such reference is not accompanied by any federal case law authority, generally does not suffice to "alert and afford a state court the opportunity to address an alleged violation of federal rights," and "vague references to such expansive concepts as due process and fair trial" in a state court proceeding will not satisfy the exhaustion requirement. *Id.* at 260.

When unexhausted claims are contained in a § 2254 application, and when such claims, if the petitioner tried to exhaust them in state court, "would be barred by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code of Criminal Procedure," the claims should be dismissed with prejudice as procedurally barred. *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999); *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a

prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"), *cert. denied*, 523 U.S. 1139 (1998). Only when the petitioner makes a colorable showing that his unexhausted claims would be considered on the merits by the state courts if he attempted to exhaust them, should the claims be dismissed without prejudice. *Horsley,* 197 F.3d at 136-137.

Here, a thorough review of the state court records confirms Respondent's contention that Thomas did not, in either his petition for discretionary review or his state application for writ of habeas corpus, raise a claim that his counsel was ineffective for failing to cross-examine Detective Rymer based on a personal, friendship-based, conflict of interest (claim 1e). That claim is therefore unexhausted. In addition, because Thomas has not made a showing that the claim would be considered by the Texas Court of Criminal Appeals if he raised it in a second or subsequent state application for writ of habeas corpus, the claim is both unexhausted and procedurally barred from review.

## V.   <u>Discussion</u> – State Law Procedural Bar

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989). In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983).

Once a state court relies on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333 (1992).

Here, the state court record shows that the Texas Court of Criminal Appeals, in rejecting Thomas' claim that he was denied a public trial (claim 3), relied on Thomas' failure to comply with a state procedural rule: "[Thomas'] allegation that he was denied his right to a public trial is a record claim that he failed to raise in his appeal and therefore he is procedurally barred from asserting it in this instant habeas action.." *Ex Parte Thomas*, Application No. WR-74,592-02 at 168. While Thomas contends that his public trial claim is akin to an ineffective assistance of counsel claim, which is properly considered for the first time in a state collateral proceeding, such as a state application for writ of habeas corpus, the Texas Court of Criminal Appeals' rejection of Thomas' public trial claim was clearly and unequivocally based on a state procedural default. This Court, however, is not in a position to review the state courts' application of Texas' procedural rules. *See Young v. Dretke*, 356 F.3d 616, 628 (5th Cir, 2004) ("in our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law").

Given the Texas Court of Criminal Appeals' rejection of Thomas' public trial claim on the

7

basis of a state procedural default,[2] and Thomas' failure to show cause and prejudice associated with the default or that the alleged denial of a public trial "probably resulted in the conviction of one who is actually innocent," Thomas' public trial claim is procedurally barred from review in this § 2254 proceeding.

## VI.    Discussion – Merits Review under § 2254(d)

The majority of Thomas' claims (claims 1(a), 1(b), 1(c), 1(d), 1(f), 2, and 4) were rejected by the Texas Court of Criminal Appeals on the merits. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the

---

[2] Where, as here, "a state court finds that a federal claim is procedurally barred, but goes on to reach the merits of that claim in the alternative, the state court's reliance on the procedural default still constitutes an independent and adequate state ground which bars federal habeas review." *Sawyers v. Collins*, 986 F.2d 1493, 1499 (5th Cir. 1993).

relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, ___ U.S. ___ 130 S.Ct. 841 849 (2010). Instead, factual determinations made by state courts carry a presumption of correctness

and federal courts on habeas review are bound by them unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5ᵗʰ Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786-787 (2011). Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 131 S.Ct. at 786.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the

Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ( "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004). A habeas petitioner can only overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's rejection of his claim(s). *Cullen*, 131 S.Ct. at 1402 (quoting *Richter*, 131 S.Ct. at 784)).

### A.     Ineffective Assistance of Counsel Claims (claims 1(a), (b), (c), (d) and (f))

In his first claim, Thomas contends that his trial counsel, Michael Turner, was ineffective at both the guilt-innocence and sentencing stages of the trial for: (a) failing to conduct an adequate pretrial investigation; (b) failing to contact, interview and call as defense witnesses Marylin Mitchel and Stephanie Lynch, both of whom could have offered testimony to impeach the State's witnesses, particularly the complainant; (c) failing to interview Shantee Mitchell; (d) failing to obtain and review reports that the State offered through the testimony of Linda Thompson, the complainant's therapist, which tended to bolster the complainant's credibility; and (f) failing to present mitigating evidence at sentencing of Thomas' background, education, ties to the community, and his "clean"

record.

Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378; *Cullen*, 131 S.Ct. at 1403 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result") (quoting *Strickland*, 466 U.S. at 686)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003).

When an ineffective assistance of counsel claim has been adjudicated on the merits by the state courts, federal habeas review is "doubly deferential," with the court taking a "highly deferential look at counsel's performance" under *Strickland*, and then imposing a second layer of deference under § 2254(d). *Cullen*, 131 S.Ct. at 1403. Under § 2254(d), therefore, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788.

Here, the Texas Court of Criminal Appeals rejected Thomas' ineffectiveness claims on the merits. In so doing, the Texas Court of Criminal Appeals relied on the following findings of fact and

conclusions of law made by the state trial court:

4.    The court finds the facts asserted in the affidavit of Michael E. Turner are true and that the affidavit of Michael E. Turner is credible. *See July 27, 2010, Affidavit of Michael E. Turner.*

5.    The Court finds based on the clerk's record and the credible affidavit that Turner represented [Thomas] in connection with the primary case. *See July 27, 2010, Affidavit of Michael E. Turner.*

6.    The Court finds based on the clerk's record and the court reporter's record that the complainant in the instant case is [P.C.] and her mother is Felicia Charles.

7.    The Court finds based on the credible affidavit of Turner that Turner conducted an adequate investigation during his representation of [Thomas], including meeting with [Thomas] and several witnesses before trial and was adequately prepared to defend [Thomas] in the primary case. *See July 27, 2010, Affidavit of Michael E. Turner.*

8.    The Court finds based on the credible affidavit of Turner that Turner made a strategic decision not to call witnesses beyond [Thomas] and the probation officer because he was concerned that it would harm [Thomas'] defense. *See July 27, 2010, Affidavit of Michael E. Turner.*

9.    The Court finds based on the credible affidavit of Turner that before [Thomas'] trial in the instant case, Turner interviewed an individual named Marilyn Mitchel and it was his belief that Mitchel's testimony would not only be not beneficial to [Thomas'] defense but actually harmful *See July 27, 2010, Affidavit of Michael E. Turner.*

10.    The Court finds that the affidavit of Marilyn Mitchel is not credible. *See March 23, 2010, Affidavit of Marilyn Mitchel.*

\* \* \*

2.    [Thomas] fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining two-part *Strickland* standard).

3.    [Thomas] fails to show what a more thorough, in-depth investigation would

have revealed and how it would have been beneficial to [his] defense. *Mooney v. State*, 817 S.W.2d 639, 696-97 (Tex. Crim. App. 1991); *Wilkerson v. State*, 726 S.W.2d 542, 550 (Tex. Crim. App. 1986).

4.  [Thomas] fails to show his counsel was ineffective for failing to call witnesses as he has not shown what specific witnesses were available to testify during the punishment phase of this trial and that their testimony would have been some benefit to [him]. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)).

* * *

7.  The totality of the representation afforded [Thomas] was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Thomas*, Application No. WR-74,592-02 at 165-167.

Thomas does not challenge any of these findings or conclusions directly. Instead, he argues that all of the state court's findings are suspect because an evidentiary hearing was not held. In addition, Thomas maintains that the state court's credibility findings should not be credited because of the absence of an evidentiary hearing. Finally, Thomas argues that the contents of Marylin Mitchel's affidavits, both the one that was filed in the state habeas proceeding, and the one that was filed herein, justify an evidentiary hearing on his claims of ineffective assistance of counsel and actual innocence.

Whether the state court's findings are presumed correct despite the absence of a state court evidentiary hearing is a separate inquiry from whether a petitioner is entitled to a evidentiary hearing in a § 2254 proceeding. Under § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." That presumption of correctness applies to all factual findings, including credibility determinations. *See*

*Hall v. Quarterman*, 534 F.3d 365, 371 n. 22 (5th Cir. 2008) ("State credibility determinations also received AEDPA deference on habeas review, but not when overcome by clear and convincing evidence."); *see also e.g., Smith v. Quarterman*, 626 F.3d 392, 405 (5th Cir. 2008) (applying the presumption of correctness to the state habeas court's finding that the attorneys' affidavits were credible). For Thomas to overcome the presumption of correctness afforded the state court's factual findings, including the credibility findings relative to the affidavits of Michael Turner and Marilyn Mitchel, Thomas must come forth with clear and convincing evidence tending to show that the factual findings, including the credibility findings, were incorrect.

Upon this record, the state trial court's findings of fact, which were adopted by the Texas Court of Criminal Appeals, must be presumed correct under § 2254(e)(1). That is because Thomas has not come forth with any clear and convincing evidence to show that the factual findings, including the credibility findings, are incorrect. Moreover, while the state court judge who made the factual findings was not the same state court judge who presided over Thomas' trial on the sexual assault of a child offense, he was the state court judge who presided over Thomas' first trial, on the charge of aggravated sexual assault, which resulted in a mistrial. As such, he was familiar with the evidence, counsel, and the defense's strategy. The presumption of correctness to be afforded his factual findings is therefore strong. *See Murphy*, 205 F.3d at 813 ("The presumption is especially strong when, as here, the state habeas court and the trial court are one and the same.").

As for Thomas' request for an evidentiary hearing in this § 2254 proceeding, 28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court

proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

(A) the claim relies on –

   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, Thomas *was* able to develop the factual basis of his claims in the state habeas proceeding with the filing of the affidavit of Marylin Mitchel. As such, an evidentiary hearing is available to Thomas in this § 2254 proceeding only if he can point to a factual dispute, which "if resolved in his favor, would entitle him to relief." *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000). Thomas has not, for the reasons set forth below, made such a showing.

The state trial court found, based on the credible affidavit of Turner, that counsel had conducted an adequate pretrial investigation and had interviewed witnesses, including Marylin Mitchel. In addition, counsel stated in the affidavit the state trial court found to be credible, that:

1.     In preparation for trial I met on numerous occasions with the defendant and his girlfriend, Stephanie Lynch. I also interviewed Marilyn Mitchell, Bruno Edwards and J'vell Butcher.

       I did not call these witnesses in the first trial, which resulted in a hung jury (7-5, I think). I made the decision to use the same strategy in the second trial.

2.     As to mitigating punishment evidence, I determined that the jury had heard all about his background including work and family history during guilt/innocence and no viable purpose would be served by producing witnesses that would be repetitive and subject to lengthy cross-examination regarding the years of sexual abuse inflicted by defendant upon his daughter. There were also serious complications regarding defendant's actual identity

17

and circumstances surrounding his being in the United States, which I was afraid would make matters worse if I called witnesses.

3.     In response to the points made in Marilyn Mitchell's affidavit, the majority of her statements are not accurate as to the events.

4.     If Felicia and [P.C.'s] testimony was substantially different in the second trial, it is because Hon. Mary Bacon let everything in, whereas Hon. Jeanine Barr had severely limited the State to only the incident they alleged in the indictment.  The State re-indicted before the retrial in such a way that the entire history between defendant and his daughter came out in the second trial.

5.     I interviewed Marilyn Mitchell before the first trial and determined that, based on what she told me, her testimony would not help with the defense we had intended to offer.  I determined that the majority of her testimony would just confirm what [P.C.] was saying.

6.     I don't recall anything about [P.C.] and her mom going shopping at the mall on September 4, 2005.

7.     I know nothing about any post-trial recantation by [P.C.] as I was not involved in any post-trial matters and was never made aware of this information.

8.     I do not recall anyone being made to leave the courtroom during voir dire.

*Ex Parte Thomas*, Application No. WR-74,592-02 at 154-155.

The record shows that the defense's strategy was to raise doubt about the truth of the complainant's testimony.  The defense attempted to do so by highlighting the admitted disputes between the complainant and Thomas about her cell phone bill and Thomas' treatment of the complainant's mother.  This, according to both Thomas during his trial testimony, and counsel during his closing argument, was the motivation for the complainant to lie about the charges.  Given this strategy, and the state court findings as to Turner's credibility, the Texas courts' rejection of Thomas' claims that his counsel was ineffective for failing to conduct an adequate pretrial investigation (claim 1(a)), failing to contact, interview and call as defense witnesses Marylin Mitchel

18

and Stephanie Lynch (claim 1(b)), failing to interview Shantee Mitchell (claim 1(c)), and failing to present mitigating evidence at sentencing (claim 1(f)), is not contrary to, and did not involve an unreasonable application of, *Strickland.* Moreover, the Texas courts' rejection of Thomas' ineffectiveness claims was not based on an *unreasonable* determination of the facts in light of the evidence presented in the state court proceeding.

Much of Thomas' argument rests on the affidavit of Marylin Mitchel that he submitted in the state habeas proceeding – an affidavit the state trial court found not credible. In that affidavit, Marylin Mitchel [Thomas' sister] stated that the complainant admitted "to family and friends that her father never did any of the things to her, that she testified to [and that] she just wanted Nathaniel out of the way so she could have her freedom because her father was too strict." *Ex parte Thomas,* Application No. WR-74,592-02 at 69. In addition, Marylin Mitchel stated in the affidavit that she, "Stephanie Lynch and other available witnesses were never interviewed or subpeonaed." *Id.* There is no clear and convincing evidence in the record to rebut the state trial court's finding that Marylin Mitchel's affidavit was not credible. Instead, the record supports the credibility finding. Marylin Mitchel was pointed out by Turner as Thomas' sister during the trial. In addition, Turner stated in his affidavit that the majority of Marylin Mitchel's statements in her affidavit "are not correct as to the events," that he interviewed Marylin Mitchel prior to the first trial and determined, based on what Marylin Mitchel told him, that "her testimony would not help with the defense we had intended to offer" and that "the majority of her testimony would just confirm what [the complainant] was claiming." *Id.* at 154. Finally, both the complainant and the complainant's mother [Felicia Charles] testified that Marylin Mitchel had tried to talk the complainant out of reporting the sexual abuse to the police. S.F. Vol. 3 at 91-92; S.F. Vol 4 at 133. Based on that evidence in the record, the

rejection of Thomas' ineffectiveness claims was not based on an *unreasonable* determination of the facts.[3]

As for Thomas' claim that his counsel was ineffective for failing to review the reports and records of Linda Thompson's therapy sessions prior to their admission, the record shows that counsel strongly objected to the testimony of Linda Thompson on the basis that she was not a medical expert. S.F. Vol. 4 at 29-41; 64-79.  That objection was considered by the state trial court at length prior to a ruling being made that Thompson could testify.  *Id.* at 79.  Similarly, counsel strongly objected to the admission of Thompson's treatment/therapy notes.  *Id.* at 30-41.  Again, the state trial court considered the objection at length prior to admitting those records into evidence.  *Id.* at 79, 92. While Thomas complains that counsel should have obtained and reviewed the records prior to trial,

---

[3] In the affidavit she filed in the state court, Marylin Mitchel makes much of the fact that she was mis-identified as the aunt who had accompanied the complainant to the Baytown Police Department:

> 12) It was Verona, [P.C.] and her cousin Shantee who went to the Baytown Police station and reported the alleged abuse; **and not Marylin Mitchel**.
>
> 13) For reasons yet to be questioned (by anyone) or explained, [P.C.], Shantee and Verona impersonate me (i.e., commit identity theft) and thus the criminal complaint which gave the false impression that I was the adult who accompanied [P.C.] and Shantee when the allegations were reported.
>
> 14) During the trial the police falsely testified that it was me, Shantee, and [P.C.] that came to the Police station to report the abuse.  When questioned further about his testimony, the policeman admitted he **"did not"** know who Ms. Marylin Mitchel was.

*Ex Parte Thomas*, Application No. WR-74,592-02 at 69 (emphasis in original).  What Marylin Mitchel fails to disclose in her affidavit, and what may have held particular significance to the state court in its credibility determination, was the fact that the parties stipulated on the record at Thomas' trial that there was an error in the police report that identified Marilyn Mitchel as the aunt who had accompanied the complaint.  The stipulation, which was read to the jury, was as follows:

> Both sides have agreed to stipulate that Sergeant Rymer, due to a typographical error in his report, made a mistake when he identified the person at the police station with [P.C.], Shantee, and Felicia as Marilyn Mitchell.  The person was Monica Mitchell, who is Shantee's mother.

S.F. Vol. 4 at 80.  This stipulation directly contradicts statements made by Marylin Mitchel in her affidavit.

20

Thomas has not shown, or even alleged, how such a review would have furthered his defense. In addition, Thomas has not shown, or alleged, how such a review of the records would have furthered counsel's argument for their exclusion. As such, there is no evidence of *Strickland* prejudice in the record, and consequently the Texas courts' rejection of this additional ineffectiveness claim is not contrary to and did not involve an unreasonable application of *Strickland* and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Because the state court findings of fact, including the credibility determinations, are presumed correct, and because the Texas courts' rejection of Thomas' ineffectiveness claims is neither contrary to *Strickland*, nor based on an unreasonable application of *Strickland*, no relief is available on those ineffectiveness claims under § 2254(d).

### B.    Perjured Testimony Claim(s) (claim 2)

In his next claim, Thomas maintains that the State obtained his conviction using the perjured testimony of both the complainant and Shantee Samuel. In support of this claim, Thomas points to the affidavit of Marylin Mitchel, in which she states,

> 16) Since Nathaniel's conviction and him being sent away to prison, [P.C.] has admitted to family and friends that her father never did any of the things to her, that she testified to. [P.C.] says she just wanted Nathaniel [Thomas] out of the way so she could have her freedom because her father was too strict.

> 17) Shantee has said to family and friends that she didn't mean for this to go as far as it did because she has helped put an innocent man in prison.

*Ex parte Thomas*, Application No. WR-74,592-02 at 69.

To prevail on a perjured testimony/false evidence claim, it must be shown (1) that the evidence presented was false; (2) that the evidence was material; and (3) that the prosecution knew

that the evidence was false. *United States v. Blackburn*, 9 F.3d 353, 357 (5ᵗʰ Cir. 1993), *cert. denied*, 513 U.S. 830 (1994); *Shaw v. Estelle*, 686 F.2d 273, 275 (5ᵗʰ Cir. 1982), *cert. denied*, 459 U.S. 1215 (1983). The use of perjured testimony is material "only where 'the false testimony could in any reasonable likelihood have affected the judgment of the jury.'" *Knox v. Johnson*, 224 F.3d 470, 478 (5ᵗʰ Cir. 2000) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)), *cert. denied*, 532 U.S. 975 (2001). Discrepancies in testimony alone do not establish the knowing use of perjured testimony. *Valles v. Lynaugh*, 835 F.2d 126, 127 (5ᵗʰ Cir. 1988); *see also Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) ("Conflicting or inconsistent testimony is insufficient to establish perjury.").

Here, Thomas failed to come forth with evidence in the state habeas proceeding that false evidence or testimony was admitted at his trial and that the State knew the evidence or testimony was false at the time it was admitted. As is set forth above, the state courts found the affidavit of Marylin Mitchel not credible. That credibility finding is presumed correct under § 2254(e)(1). Based on that credibility finding, and the fact that the statements in Marylin Mitchel's affidavits that Thomas relies upon to support his perjured testimony claim, are inadmissible hearsay, the state courts' rejection of this claim is not contrary to, and did not involve an unreasonable application of clearly established federal law. As such, under § 2254(d), no relief is available on this claim.

## C.    Actual Innocence Claim (claim 4)

In his final claim, Thomas contends that he is actually innocent of the sexual assault of a child offense. Thomas argues, in reliance on the affidavit of Marilyn Mitchel, that the complainant fabricated the charges and has since recanted.

"Supreme Court jurisprudence does not support an independent claim for federal habeas

relief based on an allegation of actual innocence." *Dowthitt v. Johnson*, 180 F.Supp.2d 832, 843 (S.D. Tex. 2000) (Atlas, J.).  A claim of actual innocence may, however, be a "'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo*, 512 U.S. 298, 316 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).  To serve as such a "gateway", however, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," and must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 324, 327.

Here, Thomas has not asserted a claim of actual innocence as a gateway to the consideration of an otherwise barred constitutional claim.  Instead, Thomas only asserts that he actually innocent of the offense.  Such a claim is not cognizable in a federal habeas corpus proceeding.  *Graves v. Cockrell*, 351 F.3d 142, 151 (5th Cir. 2003).  This final, actual innocence claim, is therefore subject to dismissal.

## VII.    **Conclusion and Recommendation**

Based on the foregoing and the conclusion that Thomas' claims are either procedurally barred from review or that no relief is available on the merits of the claims under § 2254(d), the Magistrate Judge

RECOMMENDS that Petitioner Nathaniel A. Thomas' Amended Federal Application for Writ of Habeas Corpus (Document No. 10) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented

parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 16ᵗʰ day of November, 2011

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE